IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| TERRY BLY, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security )<br>Administration, )<br>)<br>Respondent. )<br>_____) | Case No. CV 07-381-S-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## Introduction

Currently pending before the Court for its consideration is Terry Bly's ("Petitioner") Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed on September 10, 2007. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, affirms the decision of the Commissioner.

## I.
## Procedural and Factual History

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on August 23, 2002, alleging disability due to rotator cuff syndrome and low back pain. (AR 50). Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed. Administrative Law Judge Robin Henrie held a hearing on April 1, 2004, and the Appeals Council denied appeal of this decision on October 16, 2004.

**Memorandum Decision and Order - Page 1**

(AR 3-5). Petitioner appealed this denial, and pursuant to the parties' stipulation, the District Court remanded the matter for further administrative proceedings. (AR 344-345; 348-349). The Administrative Appeals Judge identified specific issues to consider upon remand, including Petitioner's credibility; the weight to be given to his Veteran's Affairs disability rating; the effect of Petitioner's obesity; and supplemental vocational testimony. (AR 348-49).

Petitioner filed a second application for Disability Insurance Benefits and Supplemental Security Income on July 6, 2004. This second application was denied initially and on reconsideration, and a request for a hearing was timely filed. Rather than hold two hearings, the merits of both cases were discussed and consolidated at a hearing held on July 6, 2006. (AR 318). At the hearing, Petitioner amended his disability onset date from August 2, 2002, to January 21, 2003, again alleging that he was disabled due to rotator cuff syndrome and lower back problems. (AR 318-319).

ALJ Hayward Reed held a hearing on July 6, 2006, taking testimony from Petitioner and vocational expert Anne Aastum. (AR 524-560). ALJ Reed issued a decision finding Petitioner not disabled on December 20, 2006. (AR 318-331).

Petitioner did not file written exceptions to the July 2006 ALJ decision, making the decision of the ALJ the final decision for purposes of an appeal. 20 C.F.R. § 404.984(d); 20 C.F.R. § 416.1484(d). Petitioner appealed this final decision to this Court, which has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the 2006 hearing before ALJ Reed, Petitioner was fifty-seven years of age. He has a college education and his past relevant work includes work as a Printed Circuit Board ("PCB") supervisor, linen clerk, shipping/receiving clerk, distribution clerk, and truck driver.

**Memorandum Decision and Order - Page 2**

(AR 329).

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date. At step two, it must be determined whether claimant suffers from a severe impairment. The ALJ found Petitioner's hypertension, diabetes, degenerative joint disease of the lumbar spine, right shoulder impingement syndrome, obesity, sleep apnea and depression were "severe" within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairments, specifically the listing for depression, musculoskeletal disturbances, and dysfunction of joints. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Petitioner was not able to perform his past relevant work as either a distribution clerk, shipping/receiving clerk, truck driver, or PCB supervisor.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.

**Memorandum Decision and Order - Page 3**

The ALJ found that Petitioner, despite his impairments, retained the residual functional capacity to do a limited amount of light and sedentary work, including work as a clerical sorter. ALJ Reed therefore issued a finding of not disabled.

### III.
### Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

**Memorandum Decision and Order - Page 4**

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## IV.
## Discussion

Petitioner believes the ALJ erred at the third and fifth steps of the sequential evaluation process. Petitioner maintains that the ALJ improperly rejected his testimony concerning his pain, thereby resulting in an improper residual functional capacity assessment. Thus, Petitioner's credibility as it relates to his subjective complaints of pain are at issue. Petitioner contends that if the ALJ had properly assessed Petitioner's complaints, the RFC assessment

**Memorandum Decision and Order - Page 5**

would have resulted in a finding of disability because Petitioner's pain would force him to miss work, thereby precluding all light duty and sedentary work.  Finally, Petitioner contends that the ALJ failed to consider the Veterans Administration's finding of disability as evidence of disability.  The Court will address each of these arguments in turn.

A.  **ALJ's Evaluation of Petitioner's Credibility as it Relates to His Subjective Complaints of Pain.**

Petitioner argues that there was an insufficient explanation given for rejecting his complaints and testimony about the pain he experienced on a daily basis.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ's findings must be supported by specific, cogent reasons.  *Reddick*, 157 F.3d at 722.  If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony).  Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony.  *Burch*, 400 F.3d at 680.  General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record.  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).  If there is substantial evidence in the record to support the ALJ's

**Memorandum Decision and Order - Page 6**

credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

In this case, the ALJ properly evaluated Petitioner's credibility concerning the intensity, persistence, and limiting effects of his pain. Petitioner's descriptions of a "typical" day and his activities of daily living go beyond mere sporadic or transitory activity, and are consistent with the ALJ's findings concerning Petitioner's RFC. *See Smith v. Califano*, 637 F.2d 968, 971–72 (3rd Cir. 1981) (explaining that sporadic or transitory activity does not disprove disability). Although the record shows Petitioner sought continued medical care for his low back pain over time, the medical reports show a consistent and stable diagnosis and conservative course of treatment. Overall, treatment notes from Petitioner's treating physicians indicate that his low back pain was managed with the use of Vioxx and later Proxicam, with the use of intermittent

**Memorandum Decision and Order - Page 7**

Tylenol with codeine when Vioxx did not alleviate the symptoms.

The diagnosis of Petitioner's condition also did not change over time. He was initially diagnosed with sciatica on the left, secondary to degenerative arthritis of the lumbar spine. (AR 157-159). X-rays of his lumbar spine showed focal near complete disc height loss at L5, S1, with large anterior osteophytic spurs and facet sclerosis. (AR 148, 192, 194). He was treated at the Veterans' Affairs Medical Center ("VAMC") and by Dr. Robert Smith during 2002 through 2006. Treatment notes indicate that he came in for intermittent "flare-ups," but that overall, he was "doing well for the most part." (AR 249). The only time his physicians limited his activity as far as his back was concerned was on July 26, 2002, when Dr. Kuykendall limited Petitioner to no repetitive bending, stooping, or overhead reaching, and restricted him from lifting no more than 25 pounds or pushing and pulling no more than 35 pounds, with no extended sitting or standing. (AR 94). That restriction, however, lasted for only six months, and no further limitations are found in Petitioner's medical records. On January 13, 2004, he was seen for back and neck pain that he rated as a 3 out of 10. At that visit, he had full range of motion, normal gait, no back tenderness or muscle spasm, and he was advised to lose weight and begin exercising. (AR 478). On another occasion on August 8, 2005, when Petitioner had a "flare-up" after being on his feet too long, he had back pain rated as a 6 out of 10. At that visit, his exam was within normal limits except for tenderness to palpitation. Petitioner was advised to stretch at home. (AR 483-485). Thus, as a whole, the medical evidence does not reveal any significant long term limitations or restrictions placed on Petitioner as a result of his low back pain.

As for his shoulder, the record reflects and the ALJ discussed Petitioner's two shoulder surgeries in 2003 and 2004 on his right shoulder with a left shoulder surgery in 1996.

**Memorandum Decision and Order - Page 8**

Concerning his right shoulder, his treatment course was for the most part unremarkable as reported by his treating physician, Dr. Schweiger. After his shoulder surgery in 2003, Petitioner was released to light duty work. (AR 230). When Petitioner continued to have discomfort related to the hardware still intact in his shoulder, he elected to have it removed and surgery was performed in 2004. (AR 429-30, 445). At his final visit with Dr. Schweiger, Petitioner was released to use his shoulder without any restrictions, except for a limited three month restriction on overhead lifting. (AR 441).

     Petitioner reported at the hearings that, for the most part, he can control the amount of pain he has by not over exerting himself. If he is not careful and does too much bending or stooping while lifting, he can experience flare-ups once or twice a week. (AR 326, 535-36). Otherwise, he is able to perform activities around the house such as vacuuming, emptying the dishwasher, driving himself to the store, and running short errands, provided he can take breaks and rest his back. He also testified that he could likely hold down a full time driver/chauffer-type job provided he did not have to lift heavy luggage. (AR 16). Petitioner still participates in hunting and fishing trips, although he is not as active as he would like since he must rest in camp or on the boat. (AR 62-67; 281). On a "typical" day when his pain level was at a 6 out of 10, he was able to help his brother install a rack system on a truck; fix himself lunch; pick up his wife's ring at a jewelry store; go to a title company to complete paperwork for refinancing his house; work on the computer; and, pick up a pizza for dinner. (AR 284-287).

     Based upon the Petitioner's reports of his activities and the lack of medical restrictions from his treating physicians, the ALJ concluded that Petitioner's statements concerning the intensity, persistence, and limiting effects of his pain were not entirely credible. The ALJ found

that, with appropriate rest breaks, Petitioner was still able to be quite active.  The Court finds that, based on the above, the record contains substantial evidence to support the ALJ's finding that Petitioner was not fully credible concerning the debilitating effects of the pain he experienced.

**B.     Residual Functional Capacity and Hypothetical Posed to Vocational Expert.**

Petitioner asserts that the ALJ's finding that he can perform sedentary work based upon the hypothetical posed to the vocational expert is in error.  The Petitioner contends that the hypothetical did not include all his limitations, specifically his alleged pain and problems with attendance at work when he is experiencing pain.

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past, *i.e.*, whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  A claimant's residual functional capacity is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a).  An ALJ considers all relevant evidence in the record when making this determination.  *Id.* Generally, an ALJ may rely on vocational expert testimony.  20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  An ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations.  *Bayliss*, 427 F.3d at at 1217.

The ALJ's residual functional capacity finding and the hypothetical he proposed to the vocational expert are supported by substantial evidence in the record.  The ALJ properly determined that Petitioner was not fully credible concerning the debilitating effect of his pain.

**Memorandum Decision and Order - Page 10**

Taking into account the credible limitations supporting Petitioner's accounts of low back pain, the hypothetical posed to Ms. Aastum accounted for those limitations. (AR 547-549). The vocational expert opined that an individual with low back pain with a college level education could perform clerical work such as a mail sorter, so long as there was no lifting more than twenty pounds; standing or walking limited to thirty to forty-five minutes at a time, and no more than four to six hours in an eight hour day; no more than thirty to forty-five minutes of sitting at a time for a total of four to six hours in an eight hour day; and able to alternate standing and siting as necessary. (AR 547-548). As a result, the vocational expert indicated that Petitioner had transferrable skills from his previous employment and could perform a significant amount of either sedentary or light work.

As far as Petitioner's problems with missed work, the ALJ noted in his opinion that Petitioner had been off work for a significant period of time from his last job at Saint Alphonsus Hospital. (AR 323). In that job, Petitioner was required to push or pull heavy laundry carts weighing up to 600 pounds or more across significant distances, load the contents onto a truck for washing, unload clean laundry from the truck, and then distribute the clean laundry in the laundry carts. (AR 272-273). That job exacerbated his back pain such that he missed a significant amount of work, was restricted to light duty, and eventually terminated from his employment. (AR 273-274; 539). However, as discussed above and by the ALJ in his credibility determination, the Petitioner could do a significant range of activity consistent with sedentary or light work, and would not experience flare-ups in his back pain so long as his activity was appropriately limited. Accordingly, it was not error to omit attendance restrictions in the hypothetical posed to the Vocational Expert, since sedentary or light work would not pose

**Memorandum Decision and Order - Page 11**

the same physical demands as his job did at Saint Alphonsis Hospital.

The ALJ's RFC assessment and hypothetical posed to the vocational expert were not the product of legal error and support the ALJ's determination that Petitioner can perform light and sedentary work as a clerical sorter.

**C.     Disability Determination by the Department of Veterans Affairs**.

Petitioner asserts that the ALJ failed to consider the Veterans Administration ("VA") determination of disability.  An ALJ must typically give great weight to a VA determination of disability.  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  But, the VA determination is not binding on the SSA because the VA and SSA criteria for determining disability are not identical.  *McCartey*, 298 F.3d at 1076*.  See also* 20 C.F.R. § 404.1504.  If the ALJ gives persuasive, specific, valid reasons for doing so that are supported by the record, the ALJ may give less weight to the VA determination.  *McCartey*, 298 F.3d at 1076.  In *McCartey v. Massanari*, the petitioner had been found to be 80% disabled by the VA and the ALJ failed to consider, or even mention, that finding in his opinion.  *Id.*  The Ninth Circuit reversed and remanded.  *Id.*

Here, the ALJ did discuss the VA's determination that Petitioner had a 50% service-connected disability.  (AR 328).  The Petitioner's rating related to his low back pain and arthritis is a cumulative 30%, while the other 20% of his disability rating is attributable to the limited motion of his arm and hypertensive vascular disease.  (AR 328).  The ALJ discussed the VA rating, and did not give it significant weight because there was no evidence that the VA considered the activities Petitioner was able to perform despite his medical conditions. Moreover, the ALJ considered that the VA rating did not necessarily prove that Petitioner had a

**Memorandum Decision and Order - Page 12**

severe disabling functional loss, especially based upon the chief disabling complaint of low back pain and associated arthritis.  Finally, the ALJ considered that Petitioner's activities of daily living supported the RFC assessment of light to sedentary work and that the VA decision was not inconsistent with that determination, given that his low back pain and arthritis resulted in a cumulative 30% disability rating.

Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be affirmed.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Plaintiff's Petition for Review (Docket No. 1) is **DENIED**.

2) The determination of the Commissioner is **AFFIRMED**.



DATED: July 28, 2008

Honorable Candy W. Dale
United States Magistrate Judge